KARVALSKY *v.* BECKER, ET AL.

[No. 27,410.   Filed October 28, 1940.]

*Seebirt, Oare & Deahl, James F. Thornburg,* and *Robert L. Oare,* all of South Bend, for appellant.

*Arnold, Chipman & Degnan* and *Horace Clarke,* all of South Bend, for appellees.

FANSLER, J.—The appellant began this action seeking to recover from the appellees, who are officers and directors of the American Aid Association, an Indiana corporation, by reason of a contract entered into between the Association and one George Howland, a resident of the State of West Virginia, by which the Association agreed that, upon the death of George Howland, it would pay to the appellant, a resident of West Virginia, the sum of $1,000. The action is predicated upon the theory that the appellees are liable under the terms of a statute of the State of West Virginia, which imposes liability upon the agent of any insurance Company of any foreign state, which has not been admitted to do business in the State of West Virginia, for all contracts made by him or through him, directly or indirectly, for or in behalf of the company, within that state.

There were answers and a trial. The facts were stipulated, and there was judgment for the defendants.

It is conceded that the Association was not authorized to do business in the State of West Virginia; that the corporation, through its officers, including the appellees, procured its members, that is to say, its certificate or policyholders, to solicit persons in the State of West Virginia to become members, that is, to purchase certificates or policies, and that it paid its members a fee for such services; that one of the members residing in

West Virginia, while in that state, solicited George Howland, a resident of that state, to become a member of the Association; that Howland signed one of the forms of application for membership, and delivered it, with the requisite membership fee, to such member; that the member deducted his commission, and forwarded the application and the remainder of the membership fee, by mail, to the principal office of the Association at South Bend; that the Association received and accepted the same, and issued a certificate to Howland, which was mailed from South Bend to West Virginia. The certificate was executed by the appellees as officers of the corporation, with full knowledge of the facts, in South Bend, Indiana, and was mailed by them to the appellant at his address in West Virginia. The certificate provides that it shall not be effective until manually delivered to the applicant. The appellees were never personally within the State of West Virginia.

The statutes of West Virginia forbid foreign corporations to transact business of the character here involved within that state unless licensed by the state, and the statute which is relied upon here as the basis of recovery provides: "The agent of any insurance company of any other state or foreign government, which has not been admitted to transact business in this state, shall be personally liable upon all contracts made by or through him, directly or indirectly, for or in behalf of any such company." Code 1923, c. 34, § 53.

The contract is clearly an insurance contract, since, under the admitted facts, the Association is not within the exemptions to the application of the insurance law provided by the statutes of Indiana.

The facts are for all practical purposes identical with those in the case of *Nat'l. Col. Aid Soc.* v. *State*

*ex rel. Wilson, Pros.* (1935), 208 Ind. 380, 196 N. E. 240. It follows that the Association was an insurance company, and that in issuing the certificate it was engaged in the insurance business. This question must be determined from the law of the place of incorporation, that is, the State of Indiana. *Travelers Protective Assn. of America* v. *Smith* (1915), 183 Ind. 59, 107 N. E. 283. Appellees contend that the question should be determined under the law of West Virginia, but they do not show that a different result would be reached.

Appellees contend that they are not within the terms of the West Virginia statute, since they were never personally within the state, and they cite *Richmond Standard Steel Spike & Iron Co.* v. *Dininny* (1906), 105 Va. 439, 53 S. E. 961, in which a similar statute of Virginia was construed, as authority supporting the conclusion that the State of West Virginia had no constitutional power to affect the rights of, or to impose burdens upon, persons who were not physically within the borders of the state. The statute in the case relied upon is somewhat different than the one in question here. It is not clear that the officer of the company sought to be charged in the Virginia case had any connection with his company's transactions in the State of Virginia. But here it is clear that the appellees caused the business to be transacted within the State of West Virginia. It is stipulated that the appellees procured the solicitation of membership in the State of West Virginia; that they executed the certificate and caused it to be delivered, and the contract to be consummated within the State of West Virginia. In delivering the policy, the Postoffice Department was the agent of the appellees. *Guardian Nat. Bank* v. *Huntington Co. State Bank* (1934), 206 Ind. 185, 187 N. E. 388.

Liability of the appellees arises not out of the insurance certificate or contract, but out of the statute, which penalizes them by making them liable to the extent of the obligations assumed by the Association in the certificate or policy. It is sometimes said that the action is ex contractu, arising out of the implied agreement of every person to observe the laws; and another view is that the action sounds in tort. 25 Corpus Juris, § 83, p. 1183. In any case it is a civil action which arises out of the violation of the statute. It is not an action upon the contract, although the terms of the contract are necessarily influential in determining the amount and character and terms of the recovery. It seems clearly settled that a principal is liable for a penalty for acts committed by his agent with his knowledge or sanction. 25 Corpus Juris, § 105, p. 1193.

The contention of appellees that a state has no power to charge a person with a penalty unless the person is physically present within the state does not find support in reason and authority. If a person outside of the territorial limits of a state puts in operation forces which produce a result constituting a crime within the limits of the state, and if jurisdiction of his person can be obtained within the state, he may be prosecuted and punished for the crime although his acts in connection therewith took place outside of the territorial jurisdiction. In such cases, however, a criminal action to punish the crime cannot be maintained in a foreign jurisdiction. But where a statute, generally characterized as penal, is designed primarily to provide a private remedy to a person injured by the wrongful act, it will be enforced in foreign jurisdictions. No question is raised in the briefs as to the right of the courts of Indiana to take jurisdiction of

the case, but there is precedent for such action. *Towle v. Beistle* (1933), 97 Ind. App. 241, 186 N. E. 344.

The contract provides that no action on the contract shall be brought after the expiration of one year from the time such action accrues. This provision is ▇▇▇ void under the statute of Indiana, and the statute of limitations applies. The appellees contend that the law of West Virginia should control the time within which the action is brought, but it is well settled that statutes and rules governing the time in which actions may be brought affect only the remedy, and that the law of the forum will control.

Before bringing this action, the appellant, by mail, demanded payment of the certificate to him as beneficiary. The Association denied liability, but offered to pay to the beneficiary all sums which the insured had paid under the certificate, without naming any specific amount. The appellant answered, saying that, since the Association would not pay him what was due, he desired that it send him the amounts that had been paid. The Association mailed him a check for $7. It is stipulated: "That upon the receipt of said letter by the corporation it sent plaintiff a check for $7.00 which was the total amount of money paid by said Howland at the time of signing said application. That said plaintiff received said check through the mail; that he undertook to cash it, but the same was not endorsed by him and was therefore not paid to him; that thereafter he consulted an attorney at law in West Virginia as to his rights, and he then refused to cash said check and returned the same to the corporation which now has possession thereof, for the benefit of said plaintiff; and that said corporation stands ready and willing to pay the same to said plaintiff at any and all times." It is

claimed by the appellees that this shows an accord and satisfaction.

An accord is an agreement to compose or settle, and the satisfaction is the execution of the agreement. Ordinarily either of the parties is free to rescind the accord at any time before satisfaction, and there are no facts here which would take this case out of the rule. If it may be said that there was an accord, that is, a complete agreement, as to the terms of the settlement, it does not appear that there was a satisfaction. The appellant did not cash the check which was sent to him. It is not contended that he held the check without cashing it for an unreasonable time, nor is it contended that the mere receipt of the check constituted payment. It is ordinarily said that the acceptance of a check and the appropriation of the funds represented by cashing the check or having it certified is payment, but that the mere receipt of a check, without an agreement that it shall be treated as payment when received, does not constitute payment. The circumstances surrounding the effort of appellant to cash the check without indorsement are not disclosed, but they seem of little importance. It may reasonably be concluded that the bank refused to cash it or to accept it for collection. He then seems to have changed his mind about cashing it, since he did not indorse it and again make an effort to cash it, and he returned the check within a reasonable time. There is no accord and satisfaction without an acceptance of payment of the amount agreed upon.

Appellees say that it is not shown whether or not a suit was instituted against the American Aid Association, or that a judgment against it is impossible or fruitless. The statutory liability of the appellees is not conditioned upon exhausting the

remedies against the Association or the previous bringing of an action against it.

Judgment reversed, with instructions to sustain the appellant's motion for a new trial.

NOTE.—Reported in 29 N. E. (2d) 560, 131 A. L. R. 1074.